IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRANDON L. SPICER-BANKS,
    Plaintiff,

vs.                              Case No. 3:09cv425/WS/EMT

D. ELLIS, et al.,
    Defendants.
_____/

## **ORDER**

      This cause is before the court on Plaintiff's civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 1). Leave to proceed in forma pauperis has been granted (Doc. 5).

      Because Plaintiff is proceeding in forma pauperis, the court is required to screen the complaint to determine if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Upon review of the complaint, it is evident that the facts as presented fail to state a claim for relief under section 1983 as to one or more of the named Defendants. The court will therefore allow Plaintiff an opportunity to clarify his allegations in an amended complaint.

      Plaintiff, an inmate of Santa Rosa Correctional Institution (SRCI), names sixteen Defendants in this action: Walter McNeil, Secretary of the Florida Department of Corrections (DOC); Kathleen Von Hoene, General Counsel for the DOC; the Inspector General of the DOC; Warden D. Ellis, former warden at SRCI; Warden R. Tifft, current warden at SRCI; and the following correctional officers at SRCI, Colonel Watson, Lieutenant Harris, Sergeant Wooten, Officer D. Waters, Officer J.B. Johnson, Officer Wallace, Officer J. Chaney, Officer J.C. Roberts, Officer D. Johnson, Officer Gibbs, and Officer Goen (Doc. 1 at 1–4).[1] Plaintiff states that on May 3, 2009, he was removed

---

[1] The page references used in this Order reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

from his cell and placed in the shower after he declared a "psychological emergency" (*id.* at 8). He was seen by a nurse, who told him he would be placed on "isolation" for 72 hours (*id.*). Officers Roberts, Waters, and Wallace monitored Plaintiff while he was in the shower, and then an unidentified officer relieved them (*id.*). A while later, Lieutenant Harris spoke with the unidentified officer about placing Plaintiff in a cell, and the officer handcuffed Plaintiff (*id.*). Sergeant Steene also entered the area, and Harris instructed him to get full restraints because Plaintiff was on "heightened security" (*id.*). Plaintiff asked Harris what "heightened security" meant, and Harris responded that he was following orders from Warden Ellis (*id.*). Plaintiff was then returned to his cell and a "red face sheet" was placed on his cell door (*id.*).

Plaintiff complained to General Counsel Von Hoene, the Inspector General, and Secretary McNeil about his placement on "illegal" custody status (*id.* at 8–10). The Inspector General and Secretary McNeil failed to respond to Plaintiff's complaints, and General Counsel Von Hoene responded in a manner that Plaintiff deems unsatisfactory (*id.* at 10–13). Plaintiff filed grievances with Warden Ellis, Warden Tifft, and Colonel Watson, but the grievances were denied (*id.* at 8–10, 12–14). Plaintiff states Officers J.B. Johnson, Chaney, Wallace, Roberts, D. Johnson, Wooten, Gibbs, and Waters were aware that Plaintiff had been placed on "heightened security" status because they saw the sign on his cell door, but they failed to report the "illegal" procedure (*id.* at 8–14). Plaintiff states that on September 4, 2009, Officer Goen "verbally forced" Plaintiff to kneel and placed leg irons on him to escort him to the shower, even though he knew that neither the "kneel down" procedure nor the "heightened security" status were authorized by DOC policy or rule (*id.* at 10).

Plaintiff contends that his placement on "heightened security" status violates his due process rights (*id.* at 11–14). As relief, he seeks an injunction enjoining prison officials from using "heightened security" at SRCI (*id.* at 11). He also requests an order requiring Defendants to attend a training program to familiarize themselves with the DOC rules pertaining to their respective duties (*id.*). Lastly, he seeks punitive damages (*id.*).

Plaintiff has failed to state a due process violation with regard to his placement on "heightened security" status. The threshold issue is whether Plaintiff has a liberty interest in freedom from "heightened security" status. A liberty interest protected by the Fourteenth

Amendment may arise from the Due Process Clause itself, or state law may create a liberty interest. *See* Sandin v. Conner, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995). The Supreme Court recognized that States may create liberty interests which are protected by the Due Process Clause, but these interests are generally limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, 515 U.S. at 484. Examples of such cases are where an inmate is involuntarily transferred to a mental hospital, or where an inmate is involuntarily subjected to the administration of pyschotropic drugs. *Id.* (citations omitted). Although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at 485 (citations, quotation marks, and alteration omitted). Confinement apart from the general population, for reasons of security or the order and effective management of the institution, is a necessary limitation of privileges and rights that incarceration demands.

Addressing the issue of an inmate's confinement in administrative segregation, the Supreme Court has noted that "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Hewitt v. Helms, 459 U.S. 460, 468, 103 S. Ct. 864, 869, 74 L. Ed. 2d 675 (1983), *receded from on other grounds by* Sandin, 515 U.S. 472, 481, 115 S. Ct. 2293, 2299, 132 L. Ed. 2d 418 (concluding that the focus of the liberty interest inquiry should be on the nature of the deprivation rather than on the language of the state prison regulation).

The provisions of the Florida Administrative Code governing close management confinement define it as follows:

> The confinement of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, is a necessary limitation of privileges and rights that incarceration demands, especially under circumstances where the inmate, through his behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others.

Fla. Admin. Code Chp. 33-601.800(1)(d). It provides for three levels of close management confinement, CMI, CMII, and CMIII, with CMI being the most restrictive single cell housing level, and CMIII being the least restrictive housing. *Id.*, 33-601.800(1)(e).

In the instant case, Plaintiff acknowledges that he was already housed in CMI, the most restrictive housing and custody status, at the time of his "psychological emergency" which resulted in his being labeled a "heightened security" inmate (*see* Doc. 1 at 8–9). The fact that Plaintiff required a higher level of security than provided in DOC regulations does not render the "heightened security" status unconstitutional. Furthermore, according to Plaintiff's allegations, the only changes in the conditions of his confinement were placement of a "heightened security" sign and "red face sheet" on his cell door and the requirement that he kneel down when placed in restraints to leave his cell. These conditions do not constitute atypical and significant hardships in relation to the conditions of Plaintiff's prison life prior to being labeled a "heightened security" inmate. Furthermore, the fact that he was labeled a "heightened security" inmate after he admittedly declared a "psychological emergency" suggests that it was not imposed as punishment, but in the interests of security and protection. Unless sufficient facts exist and are alleged showing that labeling Plaintiff a "heightened security" inmate imposed a significant hardship on him in relation to the ordinary incidents of prison life prior to his being labeled such, Plaintiff's due process claim will be subject to dismissal.

Additionally, Plaintiff is advised that even if he is able to state a due process claim, he has failed to state a basis for liability as to the Inspector General, Secretary McNeil, General Counsel Von Hoene, Warden Tifft, and Colonel Watson. Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights'

or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff alleges the Inspector General and Secretary McNeil failed to respond to his complaints, General Counsel Von Hoene responded in a manner that Plaintiff deems unsatisfactory, and Warden Tifft and Colonel Watson denied his grievances. As discussed *supra*, these facts alone do not provide a basis for liability. Therefore, Plaintiff should drop the Inspector General, Secretary McNeil, General Counsel Von Hoene, Warden Tifft, and Colonel Watson as Defendants.

If Plaintiff wishes to proceed with this action, he must file an amended complaint. Plaintiff shall completely fill out a new civil rights complaint form, marking it "Amended Complaint."

Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Defendants" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates of the alleged illegal acts. In the section titled "Statement of Claims," Plaintiff must state what rights or statutes he contends have been violated, and he must provide reference to the facts supporting the claimed violations. Finally, in the "Relief Requested" section, Plaintiff shall identify the form of relief he seeks from this court. Plaintiff is advised that the amended complaint must contain all of his allegations because once an amended complaint is filed, all earlier complaints and filings are disregarded. Local Rule 15.1, Northern District of Florida.

Plaintiff should file the amended complaint with an original signature and keep an identical copy for himself. He should not file a memorandum of law or otherwise provide citations to statutes and cases, and he should not file exhibits as evidentiary support for his complaint. The court will notify Plaintiff when memoranda and exhibits are necessary, such as prior to trial or in conjunction with a motion for summary judgment. Furthermore, Plaintiff should not submit service copies of his complaint unless and until the court directs him to do so. Finally, Plaintiff is advised that discovery is premature at this stage of the case, and Plaintiff should not do any discovery without leave of court.

Accordingly, it is **ORDERED**:

1. The clerk is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983. This case number should be written on the form.

2. Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and titled "**Amended Complaint**."

3. Plaintiff's failure to file an amended complaint may result in a recommendation that this action be dismissed for failure to comply with a court order.

**DONE AND ORDERED** this 3<u>rd</u> day of November 2009.


                        <u>/s/ *Elizabeth M. Timothy*</u>
                        **ELIZABETH M. TIMOTHY**
                        **UNITED STATES MAGISTRATE JUDGE**