IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRANDON L. SPICER-BANKS,
    Plaintiff,

vs.                                         Case No. 3:09cv425/WS/EMT

D. ELLIS, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

       This matter is before the court on Plaintiff's Second Amended Complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 44). Leave to proceed in forma pauperis has been granted.

       Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). However, such acceptance should not be given blindly; only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *See* Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502

(5th Cir. 1980);[1] *see also* Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam) ("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted). Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp., *supra* (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). Upon review of the Second Amended Complaint, the court concludes that dismissal of this action is warranted.

Plaintiff, an inmate of Santa Rosa Correctional Institution (SRCI), names two Defendants in this action, D. Ellis, the former warden at SRCI, and Warden R. Tifft, the current warden (Doc. 44 at 1–4).[2] Plaintiff states that on April 20, 2009, former warden Ellis placed him on "heightened security status" after conducting a hearing (*id.* at 5). Plaintiff states he was not notified of the hearing, provided an opportunity to defend himself, or provided an opportunity to appeal the decision (*id.*). He further states this security status is not recognized in the policies and procedures of the Florida Department of Corrections (FDOC) and is therefore unauthorized (*id.* at 5, 7). Plaintiff states this change in his security status compels him to "kneel in semen, pubic hair, and snot in front of the shower area" and wear leg irons (*id.*). He states that on December 11, 2009, he was removed from "heightened security status," but on January 25, 2010, he was placed back on it.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Case No. 3:09cv425/WS/EMT

Although he suggests there was no security reason for increasing his security status, he acknowledges he had received minor disciplinary infractions (*id.* at 5). Plaintiff states Warden Tifft knew of his placement on the unauthorized security status, yet he failed to intervene (*id.* at 5, 7). Plaintiff contends his placement on "heightened security status" violated his due process rights under the Fourteenth Amendment and constitutes a wanton infliction of pain, in violation of the Eighth Amendment (*id.* at 7). Plaintiff states his kneecaps became infected from kneeling in the unsanitary area in front of the shower, and he has suffered back pain and bruises on his ankles from wearing leg irons (*id.*). As relief, he seeks compensatory damages in the amount of $3,000.00 for physical and emotional injuries (*id.*). He also seeks an injunction requiring Defendants to terminate him from "heightened security status" (*id.*).

As Plaintiff was previously advised in an order to amend his initial complaint, the threshold issue with regard to his due process claim is whether he has a liberty interest in freedom from "heightened security status" (*see* Doc. 16). A liberty interest protected by the Fourteenth Amendment may arise from the Due Process Clause itself, or state law may create a liberty interest. *See* Sandin v. Conner, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995). The Supreme Court recognized that States may create liberty interests which are protected by the Due Process Clause, but these interests are generally limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, 515 U.S. at 484. Examples of such cases are where an inmate is involuntarily transferred to a mental hospital, or where an inmate is involuntarily subjected to the administration of pyschotropic drugs. *Id.* (citations omitted). Although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at 485 (citations, quotation marks, and alteration omitted). Confinement apart from the general population, for reasons of security or the order and effective management of the institution, is a necessary limitation of privileges and rights that incarceration demands.

Addressing the issue of an inmate's confinement in administrative segregation, the Supreme Court has noted that "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Hewitt v. Helms, 459 U.S. 460, 468, 103 S. Ct. 864, 869, 74 L. Ed. 2d 675 (1983), *receded from on other grounds by* Sandin, 515 U.S. 472, 481, 115 S. Ct. 2293, 2299, 132 L. Ed. 2d 418 (concluding that the focus of the liberty interest inquiry should be on the nature of the deprivation rather than on the language of the state prison regulation).

The provisions of the Florida Administrative Code governing close management confinement define it as follows:

> The confinement of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, is a necessary limitation of privileges and rights that incarceration demands, especially under circumstances where the inmate, through his behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others.

Fla. Admin. Code Chp. 33-601.800(1)(d). It provides for three levels, CMI, CMII, and CMIII, with CMI being the most restrictive single cell housing level, and CMIII being the least restrictive housing. *Id.*, 33-601.800(1)(e).

In the instant case, Plaintiff acknowledged in his initial complaint that he was already housed on CMI, the most restrictive housing and custody status, at the time of he was placed on "heightened security status" (*see* Doc. 1 at 8–9). The fact the Plaintiff required a higher level of security than provided in DOC regulations does not render the security status unconstitutional. Furthermore, according to Plaintiff's allegations in his initial complaint and the instant amended complaint, the only changes in the conditions of his confinement that resulted from the change in his security status were placement of a sign on his cell door, the requirement that he be placed in restraints to leave his cell, and the requirement that he kneel down (apparently in an unsanitary area) when placed in restraints (*see* Doc. 1 at 8–10; Doc. 44 at 5, 7). These conditions do not constitute atypical and significant hardships in relation to the conditions of Plaintiff's prison life prior to being labeled a "heightened security" inmate. Furthermore, the fact that he was labeled a "heightened security" inmate after he admittedly declared a "psychological emergency" (*see* Doc. 1 at 8) and again after he received disciplinary infractions (albeit minor) (*see* Doc. 44 at 5) does not suggest that it was

imposed as punishment, but in the interests of security and protection. The facts as pleaded fail to show that Plaintiff's placement on "heightened security status" imposed a significant hardship on him in relation to the ordinary incidents of prison life prior to such placement; therefore, he has failed to show he had a constitutionally protected liberty interest in remaining on his former custody status.

Additionally, the facts fail to show a violation of the Eighth Amendment. The Eighth Amendment requires that, at the minimum, all claims challenging conditions of confinement must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981); *see also* Hamm v. DeKalb County, 774 F.2d 1567, 1571–72 (11th Cir. 1985). Furthermore, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions. Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

> First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). The challenged condition must be "extreme." *Id.* at 9, 112 S. Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S. Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S. Ct. at 2482. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399.

Case No. 3:09cv425/WS/EMT

Chandler, 379 F.3d at 1289–90.

> The second part of the two-part analysis is the "subjective component:"
>
> > [T]he prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8, 112 S. Ct. at 999 (marks and citation omitted). The proper standard is that of deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). Negligence does not suffice to satisfy this standard, *id.* at 305, 111 S. Ct. at 2328, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). In defining the deliberate indifference standard, the Farmer Court stated: [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837, 114 S. Ct. at 1979. Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844, 114 S. Ct. at 1982–83.

Chandler, 379 F.3d at 1289–90.

Individuals do not have a constitutional right (1) to be free from a government employee's negligence, even if it causes an injury or (2) to have the government protect them from such an injury. *See* Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). To amount to a violation of the Constitution, the official's actions must be deliberate or reckless in the criminal sense. *See* Whitley v. Albers, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).

In the instant case, the conditions to which Plaintiff is exposed on "heightened security status," that is, kneeling in an unsanitary area and wearing leg irons when he leaves his cell, do not suggest the type of extreme conditions that pose an unreasonable risk of serious damage to Plaintiff's health or safety. Therefore, he has failed to state an Eighth Amendment claim.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's Second Amended Complaint (Doc. 44) be **DISMISSED** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. That this action be **DISMISSED**.

3. That all pending motions be **DENIED** as moot.

4. That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 12th day of March 2010.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**